## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| KALEE HILL, | ) |
| | ) |
|        Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| THE JACKSON LABORATORY, | ) |
| | ) |
|        Defendant. | ) |

## COMPLAINT
### (Jury Trial Demanded)

Plaintiff Kalee Hill complains against Defendant The Jackson Laboratory and demands a trial by jury as follows:

### PARTIES, JURISDICTION, and VENUE

1. Plaintiff Kalee Hill ("Ms. Hill" or "Plaintiff") resides in Millbridge, Washington County, Maine.

2. The Jackson Laboratory ("JAX" or "Defendant") is a Maine non-profit corporation with a principal place of business in Bar Harbor, Maine.

3. Jurisdiction is proper under 28 U.S.C. § 1331 because the matter in controversy raises questions of federal law.

4. Venue is proper in the District of Maine under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in Maine. Under Rule 3(h) of the Rules of this Court, this action should be tried in Bangor because Plaintiff resides in Washington County and because she was employed in Hancock County when the events at issue occurred.

5.      With respect to Plaintiff's claims under the Maine Human Rights Act ("MHRA"), Plaintiff has exhausted all administrative remedies and otherwise met all conditions precedent before commencing suit, including filing a timely Administrative Complaint with Maine Human Rights Commission ("MHRC") and obtaining a Notice of Right to Sue.

## JURY TRIAL DEMAND

6.      Per Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury.

## FACTUAL ALLEGATIONS

7.      Ms. Hill was employed by JAX as an Animal Technician from May 2023 until her separation on July 9, 2025.

8.      At all times, Ms. Hill met or exceeded JAX's performance expectations.

9.      In the summer of 2024, one of Ms. Hill's co-workers, Brandon Lyons, began sexually harassing her. He made several lewd comments about her body and physical appearance. He made Ms. Hill feel extremely uncomfortable at work.

10.     Pursuant to the reporting protocols set forth in JAX employee handbook, Ms. Hill made several oral reports about Mr. Lyons to her supervisor, Richard ("Richie") Grant.

11.     Ms. Hill complained to Mr. Grant about Mr. Lyons approximately 10 or 12 times over several months. She also made at least one written complaint about him. Mr. Grant's cubicle was 15 or 20 feet away from Ms. Hill's cubicle. Mr. Grant observed Mr. Lyons acting inappropriately and making inappropriate comments to Ms. Hill on many occasions.

12.   For example, Ms. Hill verbally reported to Mr. Grant the following

sexually offensive comments or other behavior:

- In April 2024, Ms. Hill reported to Mr. Grant inappropriate sexual comments Mr. Lyons made to her, including when Mr. Lyons told her that he could see her bra strap through her scrub top

- In May 2024, Ms. Hill reported to Mr. Grant that Mr. Lyons said he would "bend [her] over because that ass looked good" while she was on a ladder

- In June 2024, Ms. Hill reported to Mr. Grant that Mr. Lyons had said to her "looking good" while she was trying to work, gesturing to her backside. She also reported an incident where she squatted down to grab a box and Mr. Lyons said "damn, that was nice" and winked at her

- In August 2024, Ms. Hill moved to another workspace, away from Mr. Lyons, but he continued to make offensive and suggestive comments, which Mr. Grant frequently witnessed

- In October 2024, after Ms. Hill was promoted, Mr. Lyons made an inappropriate comment to Ms. Hill, stating that she "had to fuck people" to get her promotion. Ms. Hill verbally complained to Mr. Grant about this comment, which prompted Mr. Grant to make a verbal announcement to those in the room about spreading rumors and questioning his decisions

13.   Each time she reported Mr. Lyon's behavior, Mr. Grant told Ms. Hill

that he would "look into it" or "take care of it," but he never did.

14.   Ms. Hill complained about Mr. Lyons to supervisor Holly Blaszack on

several occasions. For example, Ms. Hill made the following reports and complaints:

- In late April of 2024, Ms. Hill told Ms. Blaszack that Mr. Lyons told other employees that the only way Ms. Hill could be promoted was by "fucking people to get to the top." Ms. Blaszack acknowledged the comments but told Ms. Hill people were "just jealous" of her

- In May of 2024, Ms. Hill reported to Ms. Blaszack that Mr. Lyons made her and a co-worker very uncomfortable by staring at them while standing in their work spaces. She told Ms. Blaszack that Mr. Lyons made sexualized gestures and comments when looking at her and other female

3

employees' backsides (muttering to himself or saying "PHEW" while wiping his forehead)

- In August 2024, when Ms. Hill moved to a workspace away from Mr. Lyons, Ms. Hill told Ms. Blaszack that Mr. Lyons continued to make offensive and suggestive comments (which Mr. Grant witnessed)

15. In response to Ms. Hill's complaints, Ms. Blaszack told her that she had to "bite her tongue" and "work with people you may not like," because "that's how you prove you can work through difficult situations and get promoted."

16. Despite numerous complaints and reports about sexual harassment in the workplace, JAX failed to investigate or document the complaints, failed to take any meaningful or appropriate action, failed to prevent a serious and foreseeable act of harassment, and informed Ms. Hill that she was expected to tolerate such sexually offensive comments and behavior.

17. On May 20, 2025, Mr. Lyons placed a video camera in a single-stall bathroom that he saw Ms. Hill use regularly.

18. An unknown JAX employee discovered the video camera in the bathroom and contacted the Bar Harbor Police Department ("BHPD").

19. On May 21, 2025, one or more representatives from the JAX Human Resources Department informed Ms. Hill that Mr. Lyons had recorded her.

20. On May 23, 2025, Ms. Hill met with BHPD, during which time Ms. Hill provided information to the officers which confirmed that she was, in fact, recorded.

21. Ms. Hill obtained a protective order against Mr. Lyons.

22. BHPD opened a criminal investigation, and the Hancock County District Attorney's Office has charged Mr. Lyons with one or more criminal offenses.

4

23.    For reasons that have not been fully explained to Ms. Hill, BHPD contacted the FBI about Mr. Lyons. She met with an FBI agent in June 2025.

24.    Other than returning to work to meet with BHPD on May 23, 2025, Ms. Hill was unable to return to work due to the events on May 20-21, 2025.

25.    For example, Ms. Hill experienced extreme anxiety immediately after learning that Mr. Lyons recorded her and meeting with BHPD. She felt unsafe. She sought medical and mental health treatment from her primary care provider and was prescribed medication for General Anxiety Disorder (GAD), Post-Traumatic Stress Disorder (PTSD) and depression.

26.    On June 11, 2025 and June 19, 2025, Ms. Hill saw her PCP at Gouldsboro Clinic. She communicated with Ms. Blaszack and others at JAX by text on May 24, May 27, June 3, June 4, and June 11 about her return-to-work status.

27.    On July 9, 2025, Ms. Hill was compelled to resign in writing:

> "To Whom it May Concern: Good afternoon. Please consider this to be my notice of resignation from the Jackson Laboratory, effective immediately. The Jackson Lab did not look out for my safety despite knowing that Brandon Lyons was harassing me and causing me to experience a lot of stress and anxiety at work. I complained about him to my supervisor, just as I was supposed to do, but nothing was done. I believe that the horrifying incident on May 20 would not have happened if Jackson Lab took steps to address the behavior that Brandon Lyons was reported for. I don't believe that Jackson Lab would do anything to keep me safe at work if I returned to my job. I ask that you please confirm that the Jackson Lab has been made aware of this notice and [my resignation] has been processed."

28.    Shortly after July 9, 2025, a JAX Human Resources representative confirmed receipt of her resignation.

<u>**COUNT I**</u>
**5 M.R.S. § 4572 (MHRA)**
**42 U.S.C. § 2000e (Title VII)**
**Sexual Harassment/Hostile Work Environment Based on Sex**

29.     Plaintiff repeats the allegations contained in Paragraphs 1 through 28.

30.     Plaintiff is female and is, thus, a member of a protected class under Title VII and the MHRA.

31.     Plaintiff was qualified to perform the essential functions of her job.

32.     Plaintiff was subjected to adverse employment action, namely, her compelled resignation on or about July 9, 2025.

33.     Plaintiff was subjected to unwelcome sexual harassment by her co-worker on numerous occasions while working for Defendant.

34.     Plaintiff reported the harassment to her employer as part of her repeated reports concerning discrimination and/or safety issues at JAX.

35.     Defendant ignored Plaintiff's complaints, diminished the seriousness of her complaints, and allowed the harassment to continue, unaddressed.

36.     The harassment was sufficiently severe and pervasive to alter the terms and conditions of Plaintiff's employment and created an abusive working environment, culminating in her compelled resignation/constructive discharge.

37.     The harassment to which Plaintiff was subjected was objectively and subjectively offensive, such that a reasonable person would find it hostile and abusive, and Ms. Hill in fact perceived it as hostile and abusive.

38.     Defendant knew or should have known of the harassment and failed to take prompt remedial action, thereby permitting a hostile work environment.

39.     As a result of Defendant's conduct, Plaintiff sustained pecuniary and non-pecuniary damages in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment and for the following legal and equitable relief under Title VII and MHRA:

A. Reinstatement, or front pay in lieu of reinstatement;
B. Back pay from July 9, 2025, with prejudgment interest;
C. Compensatory damages;
D. Punitive damages;
E. An award of reasonable attorney's fees and all costs; and
F. All other damages to which plaintiff may be entitled.

**COUNT II**
**5 M.R.S. §§ 4682(1-A), 4684-A**
**Interference with Civil Rights**

40.     Plaintiff repeats the allegations contained in Paragraphs 1 through 39.

41.     The Maine Civil Rights Act, 5 M.R.S. §4682(1-A) provides:

"A person whose exercise or enjoyment of the rights secured by [state or federal law]…has been interfered with may institute and prosecute a civil action for legal or equitable relief whenever a person:

B.      Intentionally interferes or attempts to intentionally interfere with the exercise or enjoyment of those secured rights by:

(5)     Engaging in any conduct that would cause a reasonable person to suffer emotional distress."

5 M.R.S. § 4682(1-A) (2023).

42.     The Maine Civil Rights Act further provides:

"A person has the right to engage in lawful activities without being subject to…any conduct that would cause a reasonable person to suffer emotional distress…by reason of sex."

5 M.R.S. § 4684-A.

43.     Through the aforementioned acts and omissions, Defendant has intentionally interfered with Plaintiff's civil rights to be free from sex discrimination, sexual harassment, and a sexually hostile working environment, and otherwise engaged in conduct that would cause a reasonable person to suffer emotional distress by reason of her sex.

44.     Plaintiff, a reasonable person, did in fact suffer emotional distress as a direct and proximate result of Defendant's acts or omissions and sustained damages in an amount to be determined at trial.

WHEREFORE, Plaintiff prays for judgment and for the following legal and equitable relief under Title VII and MHRA:

A. Reinstatement, or front pay in lieu of reinstatement;
B. Back pay from July 9, 2025, with prejudgment interest;
C. Compensatory damages;
D. Punitive damages;
E. An award of reasonable attorney's fees and all costs; and
F. All other damages to which plaintiff may be entitled.

Dated:  May 4, 2026

*/s/ James A. Clifford*
James A. Clifford
james@cliffordclifford.com

*/s/ Andrew. P. Cotter*
Andrew P. Cotter
andrew@cliffordclifford.com

CLIFFORD & CLIFFORD, LLC
10 Moulton Street, 5th Floor
Portland, ME 04101
(207) 613-9465

Attorneys for Plaintiff